IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANN PAULISSEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1734 |
| | § | |
| MEI TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Ann Paulissen, brings this action against defendant, MEI Technologies, Inc., for hostile work environment, retaliation, and wrongful discharge based on age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Plaintiff seeks to recover actual, exemplary, and liquidated damages, as well as attorney's fees, costs of court, and all other relief to which she may be entitled. Pending before the court is MEI Technologies, Inc.'s Motion for Summary Judgment (Docket Entry No. 29). For the reasons explained below, the defendant's motion will be granted as to plaintiff's claims for hostile work environment and retaliation and denied as to plaintiff's claim for wrongful discharge and defendant's contention that plaintiff's claim for damages is barred by her failure to mitigate her damages.

## I.  **Standard of Review**

Summary judgment is authorized if the movant establishes the absence of a genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S.Ct. at 2553-2554).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000).

Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## II.  Undisputed Facts

Defendant hired plaintiff to be its Controller in October of 2006 when she was 47 years old.  Plaintiff's job duties included financial management and analysis, tax compliance, audit interface, and oversight of defendant's 401K plan.  Plaintiff's job duties also included management of the accounting department.[1]

Plaintiff was hired by Karen Todd, defendant's 50-year-old Chief Financial Officer (CFO), and during her first year of employment reported directly to Todd.  Todd reported to Sam Boyd, defendant's 69-year-old President.   In 2007 plaintiff began reporting directly to Boyd, and did so until Boyd retired in March of 2009.   Following Boyd's retirement, plaintiff reported to Stephanie Murphy, defendant's 31-year-old Chief Administrative Officer (CAO), who is also the daughter of defendant's 64-year old Chief Executive Officer, Edelmiro Muñiz.[2]  On February 9, 2010, Muñiz terminated plaintiff's employment by letter stating:

> After careful review and consideration, I regret to inform you that your employment with MEI Technologies is

---

[1]MEI Technologies, Inc.'s Motion for Summary Judgment ("Defendant's Motion for Summary Judgment"), Docket Entry No. 29, p. 4.

[2]Ann Paulissen's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 33, p. 2.

terminated effective today.  Based on our new strategic direction, we feel that it is time to make organizational changes in order to prepare ourselves for the future growth of the company.[3]

### III.  Analysis of Plaintiff's Age Discrimination Claims

Asserting that plaintiff is unable to establish that she was subjected to a hostile work environment, retaliation, or wrongful discharge because of her age, defendant argues that it is entitled to summary judgment on all of plaintiff's claims.  Plaintiff argues that genuine issues of material fact preclude granting Defendant's Motion for Summary Judgment on her retaliation and wrongful discharge claims, but has not responded to defendant's contentions regarding her hostile work environment claim.

### A.    Applicable Law

The ADEA provides, in relevant part, that

[i]t shall be unlawful for an employer

(a)  .  .  .  to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1).  In Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009), the Supreme Court recently analyzed the ADEA's use of the phrase "because of."  In considering whether the burden of persuasion ever shifts to the defendant under the ADEA, the Court reasoned that "because of" means that "age was the

---

[3]Exhibit B to Plaintiff's Response, Docket Entry No. 33.

'reason' that the employer decided to act," and held that a plaintiff seeking to establish a discrimination claim under the ADEA "must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 2350. The Court also held that the plaintiff retains the burden of persuasion to establish this but-for causation "by a preponderance of the evidence (which may be direct or circumstantial)." Id. at 2350-51. The Gross decision rejected the mixed-motive framework previously used by the Fifth Circuit to analyze ADEA claims in which the plaintiff relies on direct evidence. Id. at 2351.

Plaintiff's wrongful discharge claim is not based on direct evidence, but on circumstantial evidence. Before Gross, the Fifth Circuit analyzed ADEA claims based on circumstantial evidence using the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973). See, e.g., Berquist v. Washington Mutual Bank, 500 F.3d 344, 349 (5th Cir. 2007), cert. denied, 128 S.Ct. 1124 (2008). In Gross, 129 S.Ct. at 2349 n.2, the Supreme Court observed that it "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . utilized in Title VII cases is appropriate in the ADEA context." Nevertheless, the Fifth Circuit has continued to use the McDonnell Douglas framework post-Gross when deciding ADEA claims based on circumstantial evidence. See, e.g., Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 n.15 (5th Cir. 2010) (recognizing that the Fifth Circuit has a history of applying the

-5-

<u>McDonnell Douglas</u> framework to allocate the burden of production and the order of presenting proof in ADEA cases).

Under the <u>McDonnell Douglas</u> framework "[a] plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." <u>Moss v. BMC Software, Inc.</u>, 610 F.3d 917, 922 (5th Cir. 2010) (quoting <u>Berquist</u>, 500 F.3d at 349).  To establish a <u>prima facie</u> case of age discrimination, plaintiff must show that

> (1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.

<u>Jackson</u>, 602 F.3d at 378 (quoting <u>Berquist</u>, 500 F.3d at 349).  If the plaintiff establishes a <u>prima facie</u> case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>Moss</u>, 610 F.3d at 922.  "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual."  <u>Id.</u> (citing <u>Jackson</u>, 602 F.3d at 378-79).  "A plaintiff may show pretext 'either through the evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"  <u>Id.</u> (quoting <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003)).

-6-

**B.    Fact Issues Exist as to Wrongful Discharge Claim**

1.    Plaintiff Has Established a *Prima Facie* Case

Citing the declaration and deposition testimony of Muñiz, defendant argues that plaintiff cannot demonstrate a prima facie case of age discrimination with regard to her discharge "because the evidence overwhelming[ly] establishes that, in the honestly-held opinion of MEIT's CEO, [plaintiff's] lack of leadership and management skills made her unqualified to serve as MEIT's controller."[4]  Plaintiff responds that she

> has a prima facie case because:  (1) MEI terminated her, (2) she was fifty-one at the time of termination, (3) she had twenty-five years accounting experience and received positive evaluations regarding her qualifications and performance from MEI's President, (4) she was replaced by an employee who was ten years younger and had ten years less experience.[5]

In support of her response plaintiff cites the letter that defendant sent to the Equal Employment Opportunity Commission (EEOC), acknowledging that plaintiff was replaced as controller by a 42-year old woman,[6] and Todd's deposition testimony acknowledging that defendant replaced plaintiff with a younger person who had approximately ten years less experience than the plaintiff.[7]

---

[4]Defendant's Motion for Summary Judgment, Docket Entry No. 29, p. 13.

[5]Plaintiff's Response, Docket Entry No. 33, p. 17.

[6]Id. (citing Exhibit G thereto, p. MEI 0070).

[7]Id. (citing Exhibit J thereto, pp. 180:16-19 and 181:9-17).

Defendant's argument that plaintiff was not qualified for her position when she was discharged because in Muñiz's opinion she lacked the leadership and management skills needed to serve as defendant's controller is foreclosed by Fifth Circuit precedent. See Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506 & n.3 (5th Cir. 1988). In Bienkowski, 851 F.2d at 1504, an employer alleged that the plaintiff was not qualified for his job as a security representative, even though his performance had been satisfactory for ten years, because his supervisors became unsatisfied with his work. The employer submitted two affidavits from the plaintiff's supervisors documenting a decline in his performance. Id. at 1505. The employer argued that the plaintiff had failed to establish a prima facie case under the McDonnell Douglas test because he had failed to show that he performed his job to the employer's legitimate expectations. Rejecting this argument, the Fifth Circuit reasoned that "a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action." Id. at 1506. The Fifth Circuit explained that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." Id. at 1506 & n.3. The Fifth Circuit explained that "[t]he lines of battle may then be drawn over the employer's articulated reason for

-8-

its action and whether that reason is a pretext for age discrimination." Id. at 1506. The Fifth Circuit reasoned that "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy." Id. at 1505. See also Berquist, 500 F.3d at 351 (reaffirming this quote from Bienkowski as "aptly stated").

Here, defendant is similarly contending that plaintiff is unable to establish a prima facie case of discriminatory discharge because she is unable to establish that she was qualified to continue holding the position for which she was hired. Since there is no evidence in the summary judgment record that some occurrence, such as suffering a physical disability or losing a necessary professional license, prevented plaintiff from working with the same experience and skill set she possessed when she was hired, there is nothing in the record to suggest that plaintiff did not possess the same qualifications on the day she was discharged as on the day she was hired. Id. at 1506 & n.3. Since there is no dispute that plaintiff was qualified for the position of Controller when she was hired, the court concludes that plaintiff has established a prima facie case of discriminatory discharge.

2.   Defendant Has Stated Legitimate, Nondiscriminatory Reasons

Citing Muñiz's declaration and deposition testimony, defendant argues that it "has clearly articulated a legitimate, nondiscriminatory reason for its decision to terminate [plaintiff]:

-9-

Muñiz's conclusion that [plaintiff] was not the right fit to lead MEIT's Accounting department given his strategy for the future."[8] Defendant explains that

> Muñiz based his conclusion on specific, concrete deficiencies in [plaintiff]'s performance, including her tardiness with cash reports, failure to complete the budget, reluctance to participate in the quality management program, resistance to changing the accounting structure to make it more flexible, lack of cooperation with her peer department managers, and failures to manage the difficult personalities in the accounting department or to resolve the conflicts between Accounting staff and MEIT's other administrative departments.[9]

Defendant's citation to Muñiz's declaration and deposition testimony that he decided to discharge plaintiff due to performance deficiencies, satisfies its burden to state legitimate, nondiscriminatory reasons for discharging plaintiff.

### 3.   Plaintiff Has Raised a Fact Issues as to Pretext

Because defendant has produced evidence of legitimate, nondiscriminatory reasons for discharging the plaintiff, plaintiff must present evidence from which a reasonable jury could conclude that defendant's stated reasons for her discharge are pretexts for age discrimination.  "A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"  Moss,

---

[8]Defendants' Motion for Summary Judgment, Docket Entry No. 29, p. 14.

[9]Id. (citing Muñiz Declaration, Exhibit D, ¶¶ 12-13, and Edelmiro Muniz Deposition Excerpts ("Muñiz Deposition"), Exhibit K, pp. 50-52 and 76-77, Docket Entry No. 30).

610 F.3d at 922 (quoting <u>Jackson</u>, 602 F.3d at 378-79).  Defendant argues that plaintiff can do neither.  Defendant asserts that plaintiff is unable to show disparate treatment because "[t]here is no evidence that a similarly-situated but younger employee was treated better under the same circumstances.  [Plaintiff] was MEIT's <u>only</u> Controller and Accounting department manager. . . No other employee had the same responsibilities as [plaintiff]."[10] Defendant asserts that plaintiff is unable to show that its proffered explanation for discharging her is false or unworthy of credence because

> there is no evidence that Muñiz's belief that [plaintiff] was not effectively managing her department or supporting his strategy was not honestly or reasonably held. . . [and because] Muñiz is entitled to assess [plaintiff]'s performance using his own standards, not [plaintiff]'s.[11]

Plaintiff responds that defendant's stated reasons for her discharge are false and unworthy of credence.  Plaintiff contends that the reasons for her discharge stated in defendant's motion for summary judgment, i.e., various performance deficiencies such as being an uncooperative, bad manager resistant to change, are false and unworthy of credence because at the time of her discharge defendant stated a different reason for her discharge, i.e., a change in strategy.  Plaintiff argues that the fact that the reason for her discharge stated in Defendant's Motion for Summary Judgment

---

[10]<u>Id.</u> at 14-15.

[11]<u>Id.</u> at 15.

differs from defendant's initial explanation for her discharge creates a fact question precluding summary judgment.[12] As evidence that defendant's stated reasons for her discharge are pretexts for age discrimination, plaintiff contends that her

> problems at MEI began when its Deputy CEO Stephanie Murphy began directly supervising her. Murphy was 32 years old. She was the daughter of MEI's owner — Ed Muniz. Murphy told [plaintiff] on at least three occasions that "she did not like working with older people because they did not listen to her." . . . Murphy made this statement to [plaintiff] on three occasions. . . Other MEI employees confirm that Murphy made this or a similar statement.[13]

Citing <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004), plaintiff argues that the fact that her direct supervisor who was also defendant's second highest ranking officer "'didn't like working with older people' alone precludes summary judgment."[14]

> (a)   Fact Issues Exist as to Whether Defendant's Stated Reasons for Plaintiff's Discharge Are False or Unworthy of Credence

In it's motion for summary judgment defendant argues that plaintiff was discharged for various performance deficiencies noted by managers who are both older and younger than she, i.e., Boyd (age 69) who noted gaps in plaintiff's 2007 and 2008 performance related to timeliness, process development, and employee

---

[12]Plaintiff's Response, Docket Entry No. 33, pp. 18-19.

[13]<u>Id.</u> at 20-21.

[14]<u>Id.</u> at 21.

-12-

management;[15] Sandy Salars (age 58), defendant's Director of Performance Excellence, who found plaintiff to be uncooperative in 2008 and 2009;[16] Todd (age 50) who took responsibility for the budget away from plaintiff in 2009;[17] and Shared Services department managers Sandra Sanford (age 44), Amie Bell (age 31), Leigh Ann Doerre (age 31), who met with Muñiz on January 15, 2010, to express frustration with plaintiff's lack of cooperation and her management of the accounting department.[18]

Asserting that the performance deficiencies defendant contends motivated her discharge are contradicted by her contemporaneous performance reviews and raises, and that her alleged performance deficiencies are notably absent from the February 9, 2010, letter of discharge, plaintiff argues that her alleged performance deficiencies are not the true reasons for her discharge but are pretexts and afterthoughts contrived after she filed her charge of discrimination with the EEOC. For example, defendant contends that

---

[15]Defendant's Motion for Summary Judgment, Docket Entry No. 29, pp. 4-5 (citing Exhibit B-1, Plaintiff's 2007 Annual Performance Review; Exhibit B-2 Plaintiff's 2008 Annual Performance Review; and Exhibit J, Alfred Boyd Deposition Excerpts, Docket Entry No. 30).

[16]Id. at 5-6 (citing Exhibit F thereto, Declaration of Sandy Salars, Docket Entry No. 30).

[17]Id. at 8 (citing Exhibit H, Declaration of Karen Todd, ¶ 9; and Exhibit M, Deposition of Karen Todd, pp. 131-132, Docket Entry No. 30).

[18]Id. at 8-9 (citing Exhibit A, Declaration of Amie Bell, ¶ 9; Exhibit C, Declaration of Leigh Ann Doerre, ¶ 4; Exhibit G, Declaration of Sandra Stanford, ¶ 18; Exhibit K, Muñiz Deposition, pp. 60-64, Docket Entry No. 30).

plaintiff    was    uncooperative,    but    under    the    heading "Teamwork/Interaction" Boyd stated in plaintiff's 2008 performance review:  "You are extremely cooperative with others and work well in the normal course of staff work in carrying out your job."[19] Defendant contends that plaintiff had poor management skills, but in her 2008 performance review, Boyd stated:

> You are managing the accounting and finance function very well except where I have noted above.  You certainly understand accounting in a firm like MEI and are doing a fine job.  In some cases, such as tax accounting, you are clearly the expert in MERI and are viewed that way all the way to the CEO.   There are two dimensions of management where you should concentrate on improving, and these dimensions are legitimately part of every senior manager's management job.
>
> First is process management as I have described above. No need to repeat here.   The other is effective delegation and employee development.[20]

Defendant's assertion that performance deficiencies motivated plaintiff's discharge differs from the reason stated in the February 9, 2010, letter of discharge where Muñiz stated:

> . . . I regret to inform you that your employment with MEI Technologies is terminated effective today.  Based on our new strategic direction, we feel that it is time to make organizational changes in order to prepare ourselves for the future growth of the company.[21]

Plaintiff argues that the reason for her discharge stated in the February 9, 2010, letter of discharge was false because "[n]ot only

---

[19]Id.

[20]Id. at MEI 000030.

[21]Exhibit B to Plaintiff's Response, Docket Entry No. 33.

was there no significant change in strategy at the time [she] was terminated, MEI has never identified any change that affected accounting or that would have required a new Controller."[22]   In support of this argument plaintiff cites Muñiz's deposition testimony that changes in strategy were "occurring all the time,"[23] and that the organizational change in 2010 was "not significant."[24] Plaintiff also cites Muñiz's inability to identify any terminations that resulted from organizational changes in 2010:

> Q.   Okay.   Are you aware of any termination of a significant number of employees that occurred in 2010 in connection with organizational changes or changes in strategy at MEI?
>
> A.   I don't recall specifically in 2010; but there were other folks that were let go because of that, yes.
>
> You have to understand that strategies and strategy changes are occurring all the time.   Strategy is not a steady thing, a static document in our company.   And so when you say, Do you do changes, that could be in the last 20 years.   So the answer is yes.
>
> Q.   You are aware in 2010 that there were a number of layoffs?
>
> A.   I didn't say that.
>
> Q.   I just want to make sure I understand.   What are you answering "yes" to?
>
> A.   That there were some layoffs that were due to strategy changes.
>
> Q.   In 2010?

---

[22]Plaintiff's Response, Docket Entry No. 33, p. 18.

[23]Id. (citing Exhibit K at 140).

[24]Id. (citing Exhibit K at 157:2-7).

A.   No.  I didn't say that.

Q.   Okay.  That's what I was asking.

A.   Don't know.[25]

The summary judgment evidence establishes that the defendant has provided two different non-discriminatory reasons for plaintiff's discharge.   In the February 9, 2010, letter of discharge Muñiz stated that plaintiff was being discharged because defendant was embarking on a "new strategic direction" that required "organizational changes" in preparation for "future growth."[26]   But in the motion for summary judgment now pending before the court, defendant states that the plaintiff was discharged for performance deficiencies.   The discrepancy between the reason for plaintiff's discharge stated in the February 9, 2010, letter of discharge, i.e., a "new strategic direction" that required "organizational changes," and the reasons stated in Defendant's Motion for Summary Judgment, i.e., performance deficiencies, raise genuine issues of material fact as to whether the defendant's legitimate, non-discriminatory reasons for plaintiff's discharge are false or unworthy of credence.   The court's conclusion that defendant's two different reasons for the plaintiff's discharge raise fact issues for trial is bolstered by evidence that could allow a reasonable fact-finder to conclude that

---

[25]Id. (citing Exhibit K at 140:14-141:12).

[26]Exhibit B to Plaintiff's Response, Docket Entry No. 33.

-16-

each of these two reasons is not true, e.g., Muñiz's testimony that
MEI did not undertake a significant change in strategy in 2010, and
by plaintiff's performance reviews in which Boyd found her to be
extremely cooperative with others.

> (b)   Murphy's Age-Related Comments Raise Fact Issues as
>        to   Whether   Defendant's   Stated   Reasons   for
>        Plaintiff's   Discharge   Are   Pretexts   for   Age
>        Discrimination

As evidence that defendant's stated reasons for her discharge
were pretexts for age discrimination, plaintiff states that on more
than one occasion she heard Murphy say that she "did not like
working with older people because they did not listen to her."[27]
As additional, corroborating evidence that Murphy made pejorative
age-related comments, plaintiff cites Todd's deposition and the
declaration of Jacqueline James, an employee in defendant's
accounting department.   At her deposition Todd denied ever hearing
Murphy say that she did not like working with older people, but
acknowledged hearing Murphy say that older people didn't listen to
her:

> Q.   Were you ever present when Ms. Murphy said words to
> the effect that she didn't like working with older
> people?
>
> A.   No.
>
> Q.   Did you ever hear her say those words?
>
> A.   She didn't say those words.

---

[27]Declaration of Ann Paulissen, Exhibit A to Plaintiff's
Response, Docket Entry No. 33, ¶ 5.

Q.    Okay.  Ever?

A.    Or I never heard her say those specific words.

Q.    Did she say anything to that effect?

A.    What she said is that older people didn't listen to her.

Q.    Who was present when that statement occurred?

A.    I don't recall specifically who was there, but I believe it was during a session that we had for inclusion. . .[28]

In pertinent part James states in her declaration: "Stephanie Murphy and Karen Todd made numerous derogatory remarks about working with older people."[29]

Murphy denies ever having stated that she didn't like working with older people, but does not deny making age-related comments. Murphy even acknowledges that she made age-related comments during a staff meeting at which plaintiff was present:

Q.    Did you ever tell Ms. Paulissen that you didn't like working with older people because they didn't listen to you?

A.    No.

Q.    Did you ever make any age-related comment to Ms. Paulissen in any way, shape or form?

    MS. VALDERRAMA: Objection; form.

A.    Relating to age? I made a general comment. I don't know specifically what I said but something along the

---

[28]Deposition of Karen Todd, Exhibit J to Plaintiff's Response, Docket Entry No. 33, p. 152:8-25.

[29]Declaration of Jacqueline James, Exhibit N to Plaintiff's Response, Docket Entry No. 33, ¶ 3.

-18-

lines of a challenge that I face as a younger employee in
our industry.

Q.   Is?

A.   Well, my challenge is that I'm younger; and I look
younger for the role that I had.  So I had a certain
obstacle to overcome in terms of having credibility for
the job that I was doing, especially early on.

.   .   .

Q.   So your testimony is you never -- did you ever use
the word "older workers" at any point in time at MEI?

A.   No, I didn't.

Q.   Okay.  The term you used was something to the effect
of because you looked younger or were younger, people
didn't take you as seriously or respect you the way that
you thought they should?

       MS. VALDERRAMA: Objection; form.

Q.  (By Mr. Hughes) Is that fair?

       MS. VALDERRAMA: Objection; form.

A.   I would say the general gist of a comment I would
have made would have been that my challenge -- one
of my challenges is that because I was so young or
looked so young, other people -- not just MEI
workers.  Other people didn't see me as credible.

Q.  (By Mr. Hughes)  When did you make those statements?

A.   I remember discussing some of those situations in a
staff meeting that I had.

Q.   Who was present in the staff meeting?

A.   I don't know exactly.  It was a standard staff
meeting.  So probably the group of people that worked for
me at the time.

Q.   When you were VP of ops or CAO?

A.   CAO.

-19-

Q.   That would have included Ms. Paulissen?

A.   Yes.[30]

Because it is undisputed that plaintiff only began reporting to Murphy after Boyd retired in March of 2009, Murphy's deposition testimony indicates that she made age-related comments at a staff meeting in plaintiff's presence less than a year before plaintiff was discharged in February of 2010.  Commenting on challenges that she faces as a younger employee, as Murphy admits she did in plaintiff's presence, at least hints of discriminatory animus toward older workers.  Although defendant characterizes Murphy's age-related comments as non-discriminatory, where a remark is capable of both a discriminatory and a benign inference, in the summary judgment context the inference must be drawn in favor of the nonmovant.  See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th Cir. 2001).

Citing Brown v. CSC Logic, Inc., 82 F.3d 651, 655-56 (5th Cir. 1996); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000); and Laxton, 333 F.3d at 583, defendant argues that Murphy's age-related comments are merely stray remarks lacking probative value because they were not made in relation to the decision to discharge plaintiff and were not made by the decision-maker, Muñiz.  Defendant's contention that Murphy's age-related

---

[30]Stephanie Murphy Deposition Excerpts, Exhibit L to Defendant's Motion for Summary Judgment, Docket Entry No. 29, pp. 43:10-44:1 and 46:12-47:17, Docket Entry No. 30.

comments are merely stray remarks lacking probative value is based
on the test that the Fifth Circuit applied in <u>Brown</u>, 82 F.3d at
655-56, to analyze whether a remark was probative of discriminatory
intent.  Under that test courts examine whether the remark at issue
is related to the protected class of persons at issue, proximate in
time to the adverse employment decision at issue, made by an
individual with authority over the adverse decision, and related to
the adverse employment decision.   However, since the Supreme
Court's holding in <u>Reeves v. Sanderson</u>, 120 S.Ct. 2097 (2000), that
a <u>prima facie</u> case and evidence casting doubt on the veracity of
the employer's explanation for the adverse action is sufficient to
support liability, the Fifth Circuit has taken a cautious view of
the stray remarks test applied in <u>Brown</u>, 82 F.3d at 655-56.  For
example, in <u>Palasota v. Haggar Clothing Co.</u>, 342 F.3d 569, 578 (5th
Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 441 (2004), the Fifth Circuit
stated that

> [a]ge-related remarks are appropriately taken into
> account when analyzing the evidence . . . even where the
> comment is not in the direct context of the termination
> and even if uttered by one other than the formal decision
> maker, provided that the individual is in a position to
> influence the decision.

The Fifth Circuit continues to apply the four-part stray remarks
test articulated in <u>Brown</u> when workplace comments are cited as
direct evidence of discrimination, but applies a two-part test used
in <u>Russell</u>, 235 F.3d at 226-27, and <u>Laxton</u>, 333 F.3d at 583, to
analyze workplace comments cited as circumstantial evidence of

pretext. See Reed v. Neopost USA, Inc., 701 F.3d 434, 441-42 (5th Cir. 2012). Under the more relaxed test used in Russell and Laxton, a plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination need only show that the remarks (1) demonstrate discriminatory animus (2) on the part of a person who is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision-maker. Russell, 235 F.3d at 226; Laxton, 333 F.3d at 583. But even under this relaxed standard, age-related remarks cannot be the only evidence of pretext. Palasota, 342 F.3d at 577 ("After Reeves, however, so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent.").

Defendant argues that Murphy's age-related statements are irrelevant because Muñiz, not Murphy, made the decision to discharge plaintiff.[31] Although the evidence shows that Muñiz made the final decision to discharge plaintiff, the evidence also shows that Muñiz made that decision based on complaints that he received from Murphy,[32] and from people who reported directly to Murphy, e.g., Sandra Stanford, Amy Bell, Leigh Ann Doerre, all of whom were

---

[31]Defendant MEI Technologies, Inc.'s Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 37, p. 12.

[32]Muñiz Deposition, Exhibit K to Defendant's Motion for Summary Judgment, Docket Entry No. 29, p. 52:9-12, Docket Entry No. 30.

substantially younger than plaintiff.[33] Muñiz testified that he made the decision to discharge the plaintiff after he met with Stanford, Bell, Doerre, and Murphy in January of 2010 and heard their concerns about plaintiff.[34] Muñiz testified that Murphy set up and attended the January 2010 meeting,[35] that Murphy "had input on candidates for employment in key positions in the company,"[36] that the controller position from which plaintiff was discharged was a key position,[37] and that he knew tension existed between Murphy and plaintiff.[38] Stanford, Bell, and Doerre all stated in their declarations that they reported to Murphy, that Murphy helped them schedule the meeting with Muñiz, that during the meeting Muñiz listened to their concerns about plaintiff, asked them to consider

---

[33]Id. at 63:8-64:8. See also Defendant's Motion for Summary Judgment, Docket Entry No. 29, p. 8 (explaining that Murphy had been the direct supervisor for Stanford, Bell, and Doerre "for the past several years"), and p. 21 (explaining that Muñiz decided to discharge Paulissen in reliance on his own observations as well as input from numerous MEIT managers who were both older and younger than Paulissen — [including] . . . Sanford (age 44), Bell (age 31), and Doerre (age 31), in addition to Murphy (age 31)").

[34]Muñiz Deposition, Exhibit K to Defendant's Motion for Summary Judgment, Docket Entry No. 29, pp. 76:10-77:2, Docket Entry No. 30.

[35]Muñiz Deposition, Exhibit K to Defendant's Motion for Summary Judgment, Docket Entry No. 29, pp. 64:4-8, Docket Entry No. 30.

[36]Deposition of Edelmiro Muñiz ("Muñiz Deposition"), Exhibit K to Plaintiff's Response, Docket Entry No. 33, p. 80:2-7.

[37]Muñiz Deposition, Exhibit K to Plaintiff's Response, Docket Entry No. 33, pp. 80:17-81:2.

[38]Id. at 130:19-25.

possible solutions, and a few days later Muñiz met with them a second time when they each told him that plaintiff was not a good fit for her position as controller.[39]

Evidence that Muñiz was aware that tensions existed between plaintiff and his daughter, Murphy, that Muñiz relied on in-put from Murphy and the Shared Department heads who reported directly to Murphy in making his decision to discharge the plaintiff, and that Muñiz decided to discharge plaintiff shortly after meeting with the Shared Department heads and hearing their belief that plaintiff was not a good fit for her position as controller, raises a genuine issue of material fact as to whether Muñiz's decision to discharge plaintiff was influenced by Murphy.  See Palasota, 342 F.3d at 578.  See also Staub v. Proctor Hospital, 131 S.Ct. 1186 (2011) (recognizing that courts may impute discriminatory animus of non-decision-makers to decision-makers when the non-decision-makers had influence or leverage over the official decision-maker); Rios v. Rossotti, 252 F.3d 375 (5th Cir. 2001) ("[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker").

_____

[39]See the following exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 29:  Exhibit A, Declaration of Amie Bell, ¶¶ 2, 7-11; Exhibit C, Declaration of Leigh Ann Doerre, ¶¶ 2, 7-10; and Exhibit G, Declaration of Sandra Stanford, ¶¶ 3, 17-21, and Exhibit 7 thereto, talking points that Bell prepared for the second meeting with Muñiz and distributed to Stanford and Doerre on January 19, 2010, Docket Entry No. 30.

Moreover, Murphy's age-related remarks are not the only evidence of pretext. For the reasons explained in § III.B.3(a), above, the court has already concluded that plaintiff has cited evidence capable of raising genuine issues of material fact as to whether the two stated reasons for her discharge were false or unworthy of credence. Taken together the evidence that Murphy made age-related remarks at a staff meeting held less than a year before plaintiff's discharge, and the doubt that plaintiff's evidence has cast on the veracity of defendant's legitimate, non-discriminatory reasons for her discharge, raise genuine issues of material fact as to whether defendant's stated reasons for discharging plaintiff were prextexts for age discrimination. Accordingly, defendant's motion for summary judgment on plaintiff's wrongful discharge claim will be denied.

## C. Plaintiff Fails to Make *Prima Facie* Showing of Retaliation

Plaintiff's retaliation claim is based on allegations that she was unlawfully discharged "because she complained about, opposed and reported age discrimination."[40]

### 1. Applicable Law

Cases in which a plaintiff alleges retaliation for engaging in activity protected by the ADEA are analyzed under the burden-shifting framework established in McDonnell Douglas, 93 S.Ct. at

---

[40]Plaintiff's Complaint, Docket Entry No. 1, p. 4 ¶ 14.

1817.  See Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 259
(5th Cir. 2001).  To establish a prima facie case of retaliation
under the ADEA plaintiff must show that (1) she engaged in
protected activity under the ADEA, (2) she was subjected to an
adverse employment action, and (3) there was a causal connection
between the protected activity and the adverse employment action.
Id. (citing Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122
n.8 (5th Cir. 1998)).  If the plaintiff meets that burden, the
defendant must produce a legitimate, nondiscriminatory reason for
its adverse employment action.  See Sherrod, 132 F.3d at 1122.  See
also Allard v. Holder, 494 Fed. Appx. 428, 430 (5th Cir. 2012).
Once the defendant has met this burden, the burden shifts back to
the plaintiff who must demonstrate that the proffered reason is a
pretext for age discrimination.  Sherrod, 132 F.3d at 1123.

### 2.  Application of the Law to the Undisputed Facts

Defendant argues that it is entitled to summary judgment
because plaintiff is unable to establish a prima facie case of
retaliation because plaintiff is unable to show that she engaged in
activity protected by the ADEA.  In order to make a viable claim
for retaliation under the ADEA one must prove that he or she
engaged in activity protected under 29 U.S.C. § 623(d), which
provides:

> It shall be unlawful for an employer to discriminate
> against any of his employees or applicants for
> employment, . . . because such individual . . . has

-26-

opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

As evidence that she engaged in protected activity, plaintiff cites her declaration in which she states:

> I told MEI's owner Ed Muñiz in 2009 that I felt I was being discriminated against because of my age.  I told him about Murphy stating that she didn't like working with older people.  Muñiz told me he did not believe his daughter was discriminating against me.  He told me that I should try to go to lunch with Ms. Murphy and get to know her better.  Approximately six months before I was terminated, I told Vic Walczak, an MEI officer, that my supervisor Ms. Murphy had stated that she did not like working with older people.  I also told Walczak that I felt I was being discriminated against because of my age. I told Sam Boyd, then the President of MEI, about Murphy's statement.  Boyd told me to try and work the situation out myself.[41]

Because the statements in plaintiff's declaration regarding the complaints of age discrimination that she allegedly made to Muñiz, Boyd, and Walczak contradict without explanation her sworn deposition testimony about these complaints, the court will use the plaintiff's deposition testimony to analyze this issue. See S.W.S. Erector, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) (motions for summary judgment cannot be defeated by an affidavit that impeaches without explanation sworn testimony).

At her deposition plaintiff stated that she could not recall using the term "discrimination" and did not think that she used the

---

[41]Declaration of Ann Paulissen, Exhibit A to Plaintiff's Response, Docket Entry No. 33, p. 4 ¶ 8.

term "discrimination" when speaking to Muñiz and/or Boyd about Murphy:

> Q. Okay. Now, tell me what did you say to Mr. Muniz in his office about Ms. Murphy?
>
> A. That I was -- you know, that I was concerned.
>
> Q. At -
>
> A. And I was going to finish.
>
> Q. Try and use your words as close as you can recall them. Okay?
>
> A. Yes, ma'am.
>
> Q. You said you were concerned?
>
> A. I was concerned with the fact that she had an issue working with older people and she had stated that to me, that she surrounded herself with others around her age that she had gone to high school with and that I felt like she considered me an older person, and that when I had ideas or comments that she was not open at all to listening to me. And I sought his advice on what to do.
>
> . . .
>
> Q. Okay. All right. What did Mr. Muniz say to you in response to your comments?
>
> A. My recollection is that it was similar to Mr. Boyd's and that was, you know, try to take time and go to lunch with her and the group that she went to lunch with. Try -- it was almost like when I had -- you know, maybe do a little bit different communication, presentation when -- when talking with Stephanie.
>
> Q. So did -- did you use the word "discrimination" with him?
>
> A. I do not think I used the term "discrimination."
>
> Q. Okay. And when you spoke earlier to Mr. Boyd, did you use the term "discrimination"?
>
> A. I can't recall if I did at that time or not.

Q.   Can you -- you can't recall using it?

A.   Correct.

Q.   All right.  And what was your response to Mr. Muniz when he suggested in response to the five items you raised with h[im] that you try to take time and go to lunch with her and her group and try to approach her differently in your manner of communication?  What was your response to him?

A.   That I would -- I would work on those things.  And then I thanked him for his time.

Q.   Okay.  All right.  And that's the only conversation that you had with Mr. Muniz about this matter?

A.   I think that's correct, yes.[42]

When asked about the discussions she had about Murphy with Walczak plaintiff said that she complained about a hostile work environment:

Q.   Okay.  Is there anything else you raised with Mr. Walczak about any conduct by Ms. Murphy?

A.   At -- at some point I discussed what I felt was the hostile environment.

Q.   All right.  So did you use the terms "hostile environment" with Mr. Walczak?

A.   I might have.

Q.   Do you specifically recall whether you used that term with Mr. Walczak?

A.   I - I - my gut and my recollection is, yes, I probably did.[43]

---

[42]Ann Paulissen Deposition Excerpts, Exhibit I to Defendant's Motion for Summary Judgment, Docket Entry No. 29, pp. 93:3-96:6, Docket Entry No. 30.

[43]Id. at 98:12-22.

The Fifth Circuit has recognized that an informal, internal complaint can be activity protected by an anti-retaliation provision, as long as that complaint asserts a violation of the law. See Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008) (analyzing the issue under the Fair Labor Standards Act (FLSA) and asserting that "not all abstract grumblings or vague expressions of discontent are actionable complaints"). The Supreme Court has recently considered the language as well as the purpose and context of the anti-retaliation provision of the FLSA and held that the FLSA's anti-retaliation provision protects both oral and written complaints of a violation of the FLSA. Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1334 (2011). The Supreme Court explained, however, that for a complaint to constitute protected activity the complaint must give fair notice to the employer: "To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Id. at 1335.

The complaints that plaintiff made to Muñiz, Boyd, and Walczak regarding Murphy's comments do not constitute protected activity because they were not sufficiently clear or detailed for a reasonable employer to understand them, in light of both content and context, as an assertion of rights protected by the ADEA and a call for the protection of such rights. Plaintiff neither

complained of a violation of the ADEA nor gave Muñiz, Boyd, or Walczak fair notice that she was asserting rights protected by the ADEA and calling for their protection.  Instead, plaintiff simply told Muñiz, Boyd, and Walczak that Murphy made age-related comments that made her uncomfortable, and asked for advice on how to improve her working relationship with Murphy and Murphy's peers.  Because none of the complaints that plaintiff made about Murphy to Muñiz, Boyd, or Walczak concerned discrimination or notice that a violation of the ADEA had occurred, plaintiff's complaints did not provide defendant fair notice that she had opposed any practice made unlawful by the ADEA.  Accordingly, the court concludes that plaintiff has failed to establish a prima facie case of retaliation because she has failed to cite any evidence showing that she engaged in activity protected by the ADEA.

Even if the complaints that plaintiff made to Muñiz, Boyd, and Walczak did constitute activity protected by the ADEA, plaintiff has still failed to establish a prima facie case because she has failed to present evidence capable of establishing a causal connection between her protected activity and her discharge. Plaintiff argues that

> causation is shown by the disparity between MEI's treatment of [her] before and after she complained. Before complaining, Paulissen received raises, bonuses and positive feedback from 2006 through 2008 when she reported to MEI's CFO Karen Todd and its President Sam Boyd.  However, Paulissen began having problems at MEI after Murphy began supervising her in March 2009 and Paulissen complained. . . Although MEI asserts that Muñiz made the termination decision alone, and that he was

unaware of Paulissen's complaints, Muñiz himself provided evidence raising a fact question. First, Muñiz admitted that Murphy would have been involved in hiring and firing key employees such as Paulissen. (Exh. K at 80-81) Second, Muñiz admits that he was aware of the tension between Paulissen and Murphy. (*Id.* at 129-30) Finally, because Muñiz' stated reason for termination is clearly a false pretext, there is at least a fact question whether he in fact terminated Paulissen because she complained about Murphy's discrimination.[44]

Plaintiff's arguments are to no avail because she has failed to cite any summary judgment evidence showing that two of the individuals to whom she complained, Boyd and Walczak, had anything to do with the decision to discharge her. Moreover, although defendant contends that Muñiz made the final decision to discharge her, plaintiff contends that the decision was motivated by the discriminatory animus of Murphy. Yet, plaintiff has failed to present any evidence that Murphy knew plaintiff had engaged in activity protected by the ADEA by lodging complaints of age discrimination.

Because plaintiff has failed to cite evidence capable of establishing that she engaged in activity protected by the ADEA, or that there exists a causal connection between her engagement in activity protected by the ADEA and her discharge, plaintiff has failed to establish a prima facie case of retaliation in violation of the ADEA. Accordingly, Defendant's Motion for Summary Judgment on plaintiff's retaliation claim will be granted.

---

[44]Plaintiff's Response, Docket Entry No. 33, p. 23.

**D.   No Fact Issues Exist as to Hostile Environment Claim**

Plaintiff alleges that MEI "subjected her to a hostile work environment because of her age."[45]  Defendant argues that it is entitled to summary judgment on plaintiff's hostile work environment claim because plaintiff has abandoned this claim. Defendant explains that "[n]otably absent from Plaintiff's response brief is any evidence or argument supporting her claim that she experienced age-related harassment or an age-based hostile work environment while employed at MEIT."[46]

The Fifth Circuit has "never held that the ADEA contemplates hostile work environment claims," Mitchell v. Snow, 326 Fed.Appx. 852, 854 n.2 (5th Cir. 2009), but has assumed that such claims are viable.  See Gobert v. Saitech, Inc., 439 Fed.Appx. 304, 307 n.3 (5th Cir. 2011).  Establishing a prima facie case of discrimination on the basis of a hostile work environment requires a plaintiff to show that, inter alia, the alleged hostile environment "affected a term, condition, or privilege of employment."  Jones v. Flagship International, 793 F.2d 714, 719 (5th Cir. 1986).  To meet that standard, the complained-of conduct must be "'so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place.'"  Hockman v. Westward Communications, LLC, 407 F.3d 317, 326 (5th Cir. 2004) (quoting Shepherd v.

---

[45]Plaintiff's Complaint, Docket Entry No. 1, p. 4 ¶ 14.

[46]Defendant's Reply, Docket Entry No. 37, p. 17.

Comptroller of Public Accounts, 168 F.3d 871, 874 (5th Cir. 1999)).
The incidents that plaintiff complains of — including, for example,
Murphy's stating on three separate occasions that she didn't like
working with older people, Murphy's asking her once if she had ever
kissed a girl, and Murphy's one-time conversation about a sex-toy
party, are isolated incidents that are neither sufficiently severe
nor sufficiently pervasive as to constitute a hostile environment.
See Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 347-
48 (5th Cir. 2007) ("Although discriminatory verbal intimidation,
ridicule, and insults may be sufficiently severe or pervasive to
support evidence of a Title VII violation, . . . simple teasing,
offhand comments, and isolated incidents, (unless extremely
serious) will not amount to discriminatory charges that can survive
summary judgment." (citations omitted)).  Accordingly, Defendant's
Motion for Summary Judgment on plaintiff's hostile environment
claim will be granted.

### IV.  **Plaintiff's Claim for Damages is Not Barred**

Plaintiff seeks to recover actual, exemplary, and liquidated
damages.  Defendant argues that "[p]laintiff's claim for damages is
barred because she failed to mitigate her damages after August 1,
2010, when she stopped looking for employment in a substantially
equivalent position."[47]   As evidence that plaintiff failed to

---

[47]Defendant's Motion for Summary Judgment, Docket Entry No. 29,
p. 24.

mitigate her damages by abandoning her search for equivalent employment, defendant cites plaintiff's deposition testimony that she stopped looking for work once she started working at NASA.[48]

A plaintiff suing for damages has a duty to mitigate her damages. Such a plaintiff is required to use "reasonable diligence to obtain substantially equivalent employment." West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003). Substantially equivalent employment is employment that provides "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." Id. (citing Sellers v. Delgado Community College, 839 F.2d 1132, 1138 (5th Cir. 1988)). The employer has the burden of proving failure to mitigate. In order to meet this burden the employer "must show not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have discovered and for which she was qualified." Huffman v. City of Conroe, 2009 WL 361413, at *13 (S.D. Tex. Feb. 11, 2009) (citing Sparks v. Griffin, 460 F.2d 433, 443 (5th Cir. 1972)).

In Huffman the court acknowledged that the Fifth Circuit's opinion in Sellers, 839 F.2d at 1138, appears to conflict with the Court's earlier opinion in Sparks, 460 F.2d at 443, in terms of the elements that must be shown to establish a failure to mitigate damages. Sellers, 839 F.2d at 1139, the more recent decision,

---

[48]Id. at 24-25.

appears to state that if an employer proves that an employee has not made reasonable efforts to seek out employment, it need not show the availability of substantially equivalent employment. Sparks, 460 F.2d at 443, by contrast, states that the employer must show not only that the plaintiff failed to use reasonable diligence in seeking employment, but also that there were jobs available which she could have discovered and for which she was qualified. In Huffman the court resolved the conflict by noting that one appellate panel may not overrule a decision of a prior panel absent en banc reconsideration or a superseding decision by the Supreme Court because where two panel opinions conflict, the earlier opinion controls. Huffman, 2009 WL 361413, at *13 (citing United States v. Dial, 542 F.3d 1059, 1060 (5th Cir. 2008)).

Defendant argues that it is entitled to summary judgment that plaintiff has failed to mitigate her damages because once she accepted employment at NASA, she stopped seeking substantially equivalent employment either via promotion at NASA, or elsewhere. Since, however, defendant has not presented any evidence that substantially equivalent employment was or is available that plaintiff could have discovered and for which she would be qualified and, yet, has not applied, defendant has failed to establish that it is entitled to summary judgment that plaintiff has failed to mitigate her damages. See Sparks, 460 F.2d at 443. Accordingly, Defendant's Motion for Summary Judgment on plaintiff's claim for damages will be denied.

## V.  <u>Conclusions and Order</u>

For the reasons explained in § III, above, the court concludes that plaintiff has not raised genuine issues of material fact for trial as to whether she was subjected to a hostile environment and/or discharged in retaliation for having complained of age discrimination, but that plaintiff has raised genuine issues of material fact for trial as to whether defendants discharged her because of her age.  Thus, the court concludes that defendant is entitled to summary judgment on plaintiff's claims for retaliation and hostile work environment but is not entitled to summary judgment on plaintiff's wrongful discharge claim.  For the reasons explained in § IV, above, the court concludes that defendant is not entitled to summary judgment that plaintiff's claim for damages is barred by the failure to mitigate.  Accordingly, MEI Technologies, Inc.'s Motion for Summary Judgment (Docket Entry No. 29) is **GRANTED IN PART** and **DENIED IN PART**.

Docket Call will be held on May 10, 2013, at 4:00 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.  The Joint Pretrial Order will be filed by May 8, 2013.

**SIGNED** at Houston, Texas, on this 25th day of April, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE